Argued July 21, affirmed August 17, 1977

SCHMITZ, *Petitioner,*

*v.*

OREGON LIQUOR CONTROL COMMISSION,
*Respondent.*

(CA 7376)

567 P2d 591

Nels Peterson, Portland, argued the cause for petitioner. With him on the briefs were Richard C. Baldwin and Peterson, Peterson & Peterson, P.C., Portland.

Al J. Laue, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before Schwab, Chief Judge, and Thornton and Tanzer, Judges.

TANZER, J.

**TANZER, J.**

This is an appeal from an order of the Oregon Liquor Control Commission denying petitioner's application for a Class A (liquor by the drink) license for his restaurant on grounds that the license "is not demanded or required by the public interest" and that the applicant "is not of good repute and moral character." Petitioner advances several contentions to challenge the Commission's conclusions, the strongest of which is that the conclusions are not supported by substantial reason, *McCann v. OLCC,* 27 Or App 487, 556 P2d 973 (1976) *rev den* (1977).

Regarding the first ground, the order sets out in some detail that the locality of the applicant, Pacific City, is a tourist area and the applicant's volume is therefore seasonal, that there are several other outlets immediately nearby and in the surrounding county in excess of the number which would be warranted by the 1:2000 statutory ratio, ORS 472.110(4), and that there is a seasonal DA license granted to the establishment across the street from the applicant. From these facts, the order concludes that Pacific City is adequately served by the existing licensees and the public need would better be served by granting the available licenses elsewhere in the state than in a community of limited population generating seasonal patronage.

As we held in *McCann v. OLCC,* where the statutory delegation of authority is broad and, by the nature of the decision to be made, predecisional standards or criteria cannot be articulated, then we require that the agency find facts and relate them rationally to the statutory purpose. We review the order for soundness of reasoning rather than for judicial agreement with it. This portion of the order meets those *McCann* requirements and is upheld. *Oakridge Moose Lodge v. OLCC,* 23 Or App 397, 559 P2d 925 (1977).

The second ground of the order is based upon ORS 472.160 which provides that:

[ 565 ]

"The commission may refuse any applicant if it has reasonable grounds to believe:

"* * * * *

"(9) That the applicant is not of good repute and moral character."[1]

The term "good moral character" means different things to different people in different situations for different purposes. It is too broad for administrative application without definitional or functional refinement. When an agency applies the term, it must do so in a way which is related by reason to the advancement of the purposes of the legislative delegation. The agency may not take action based upon those aspects of moral character which do not relate to the agency's statutory purpose, for, simply stated, those character traits are none of the agency's business.

In this context, the OLCC is obliged by statute to look to an applicant's moral character, but only to those aspects of moral character which relate significantly to the proper exercise of the license involved. In *McCann v. OLCC,* 27 Or App at 490-92, for example, we held that a conclusion that the applicant was not of good moral character was faulty because the violations of California regulations on which the conclusion was based did not by their nature necessarily establish moral turpitude or disrespect for law.

Here the relationship between the acts and statutorily significant aspects of moral character are set out in the order. Finding No. 12 states:

"On two occasions on or about October or November, 1975, applicant stated that 'he was not worried about getting a license' and that he would go 'under the table' and buy a license; and that he had a lawyer who would 'get him a license'."

Ultimate finding of fact No. 5 states:

"The statements of applicant that he was going to purchase a license, show a purpose to influence this

---

[1] The parties agree that there is no evidence of poor repute and that this portion of the order stands or falls on the issue of good moral character.

Commission and demonstrate a lack of honesty in dealings with public bodies, affecting his moral character."[2]

Honest dealing is an essential part of the relationship between the Commission and the licensee. We therefore hold that the facts and reasoning support the conclusion that the applicant was of poor moral character as that term relates to the administration of the liquor control laws.

Affirmed.

---

[2]Respondent's brief argues an additional reason in support of the conclusion of poor moral character:

"* * * Such conduct, if engaged in, could reasonably be construed as either an attempt or the solicitation of the Class A Misdemeanor of Official Misconduct, ORS 161.405, 161.435, and 162.415. An inference of a lack of good moral character can reasonably be drawn from evidence of a willingness to commit a criminal act."

The Commission did not choose to rely upon the reasoning advanced by counsel. We could further understand how the agency, seeking to preserve its appearance of integrity, would desire to avoid the granting of a license to a person who had stated that he could purchase a license, but the Commission did not rely upon this reason either.

Since these reasons were not exposited in the order, we do not consider them. The order must be judged valid or not based upon the quality of the reasoning contained in it, rather than upon the quality of reasons which occur thereafter to counsel or the court based upon the same facts.