Richard P. HERNANDEZ,
M.D., Respondent,

v.

STATE BOARD OF REGISTRATION
FOR THE HEALING ARTS,
Appellant.

No. WD 52275.

Missouri Court of Appeals,
Western District.

Jan. 21, 1997.

Johnny K. Richardson, Dean L. Cooper, Brydon, Swearengen & England, P.C., Jefferson City, for appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Ronald Molteni, Assistant Attorney General, Jefferson City, for respondent.

Before ULRICH, C.J., P.J., and SPINDEN and EDWIN H. SMITH, JJ.

ULRICH, Chief Judge.

The State Board of Registration for the Healing Arts (Board) appeals the judgment

of the Circuit Court of Cole County reversing the decision of the Administrative Hearing Commission (Commission) that denied an award for attorney's fees and expenses incurred by Richard P. Hernandez, M.D., as a prevailing party under section 536.087. Prior to Dr. Hernandez' seeking attorney's fees, the Board had denied Dr. Hernandez' application for a license to practice medicine in Missouri, he had appealed the denial, the Commission had found in Dr. Hernandez' favor, and, on appeal, the circuit court affirmed the Commission's decision and ordered the Board to issue a license to Dr. Hernandez to practice medicine in Missouri. The issue presented is whether the Board was substantially justified in denying Dr. Hernandez' application to practice medicine in Missouri thereby prohibiting an award of attorney's fees to Dr. Hernandez. The judgment of the trial court reversing the decision of the Administrative Hearing Commission is itself reversed, and the decision of the Administrative Hearing Commission denying Dr. Hernandez attorney's fees is affirmed.

## UNDERLYING FACTS

Dr. Hernandez graduated from the University of Minnesota School of Medicine in 1990. He then completed a one year internship program in internal medicine at Presbyterian Hospital in New York City. He was subsequently selected for a three year residency program in anesthesiology. Following the practice of the hospital, he was awarded the first of three one year contracts in Presbyterian's anesthesiology residency program beginning July 1, 1991, through June 1992. Dr. Hernandez was notified on February 28, 1992, by Dr. Edward Miller, Director of the Residency Program, and by Dr. Allen Hyman, Director of Education of Presbyterian Hospital, that he had not made satisfactory progress in the program and would be prohibited from completing the residency program. As a result of Presbyterian's decision, Dr. Hernandez did not treat patients at the hospital after February 28, 1992, and he was not allowed to participate in the program. However, Presbyterian did retain Dr. Her-

nandez on its payroll through the remaining months of the contract. As a result of Presbyterian's decision, the American Board of Anesthesia denied Dr. Hernandez a satisfactory rating for the period of July 1, 1991, through December 31, 1991, and it did not credit him for any clinical training at Presbyterian. In March, 1992, Dr. Hernandez moved to South Bend, Indiana, to study for admission in another residency program.

## APPLICATION FOR LICENSE TO PRACTICE MEDICINE

Dr. Hernandez applied to the Board on July 13, 1992, for license to practice medicine as a physician and surgeon in Missouri. The Board subsequently requested additional information regarding Dr. Hernandez' participation in the anesthesiology residency at Presbyterian Hospital located in New York City. The request for additional information was prompted by Dr. Hernandez' response to "Question 22" on the application which asked:

Have you ever been warned, censured, disciplined, had admissions monitored, had privileges limited, had privileges suspended, been put on probation or ever been requested to withdraw from any licensed hospital, nursing home, clinic or other hospital care facility with an organized medical staff, in which you have trained, been a staff member, been a partner, or held hospital privileges?

Dr. Hernandez marked "NO" in response to this question. The licensure application also directed Dr. Hernandez to list his activities stating:

Please complete this form by providing a chronological listing of medical and nonmedical activities since graduation from high school to the present date. All dates must be accounted for including all beginning and ending months and years. In CHRONOLOGICAL ORDER, list the positions you held, complete names, addresses and zip codes of employers. If unemployed or on vacation for more than one month, list your exact activities and locations.

In response to this question Dr. Hernandez indicated in pertinent part that from July 1991 through June 1992 he had been a resident in the anesthesia program at Presbyterian Hospital. The Board denied Dr. Hernandez' application on December 18, 1992. The Board's underlying basis for the denial was that Dr. Hernandez was not a person of good moral character;[1] he used fraud,[2] deception, or misrepresentation[3] to secure a license; he engaged in dishonesty and misrepresentation in the performance of functions and duties of a doctor; he violated a provision of Chapter 334 RSMo 1995 or regulation promulgated thereunder; and he knowingly made false statements regarding "Question 22" which was a document executed in connection with the practice of medicine.

The source of controversy concerned the apparent discrepancies between Dr. Hernandez' negative answer to "Question 22" on the application form and Presbyterian's action terminating his participation in the anesthesiology training program (Residency); and whether he was a resident in Presbyterian's anesthesia program for the entire year, as he asserted in his application, although he moved to Indiana during the middle of the first year of the Presbyterian Hospital residency and omitted disclosing the move on the application form.

Following three requests by Dr. Hernandez, Dr. Miller, as Director of the Presbyterian Hospital Residency Program, submitted a letter of reference to the Board on August 19, 1992, disclosing a number of Dr. Hernandez' unsatisfactory performance ratings while he was in the residency program. In response to the Board's written question, "During the time [Dr. Hernandez] was in your training program has he/she ever been subject to any disciplinary action, such as an imposition of consultation requirements, suspension, or termination?" Dr. Miller answered "Yes." Dr. Miller explained in part in an attached letter that Dr. Hernandez was not allowed to continue Presbyterian's program because of his inability to satisfactorily progress but that he was "meticulous" and an "extremely conscientious, thoughtful, caring physician who did his utmost to improve his skills."

The Board directed Dr. Hernandez to appear before a four-member Licensure Committee of Board members on December 3, 1992. The Committee concluded after the interview that Dr. Hernandez had deliberately lied on the application and recommended to the Board that licensure be denied. The nine-member Board denied Dr. Hernandez' application on December 18, 1992, based upon the recommendation of the Committee and Dr. Hernandez' application material and accompanying letters.

Dr. Hernandez filed a complaint with the Commission on January 12, 1993. The Commission overturned the Board's decision on October 8, 1993, and ordered the Board to issue to Dr. Hernandez a license to practice medicine. The Board appealed the Commission's decision to the Circuit Court of Cole County where, on August 16, 1994, the court affirmed the Commission's ruling.

Dr. Hernandez filed a complaint with the Commission on November 5, 1993, requesting an award for attorney's fees incurred in the agency proceedings. The complaint was

---

1. Good moral character is generally defined as honesty, fairness, and respect for the rights of others and for the laws of the state and nation. *See e.g. Florida Bd. Of Bar Examiners,* 364 So.2d 454, 458 (Fla.1978); *State ex rel. McAvoy v. Louisiana State Bd. Of Medical Examiners,* 238 La. 502, 115 So.2d 833, 839 n. 2 (1959); *Schmitz v. Oregon Liquor Control Comm'n,* 30 Or.App. 563, 567 P.2d 591, 593 (1977).

2. Fraud is defined generally under the common law as an intentional perversion of truth to induce another, or to act in reliance upon it. *Sof-*

*ka v. Thal,* 662 S.W.2d 502, 506 (Mo. banc 1983); *State ex rel. Williams v. Purl,* 228 Mo. 1, 128 S.W. 196 (1910); *Schimmer v. H.W. Freeman Constr. Co. Inc.,* 607 S.W.2d 767, 769 (Mo.App.1980).

3. Misrepresentation is generally defined as a falsehood or untruth made with the intent of deceit rather than inadvertent mistake. *State Bd. Of Registration for Healing Arts v. Young Moo Kang, M.D.,* No. HA–83–2295 (Mo. Admin. Hearing Comm'n, May 24, 1984).

amended on February 16, 1995, to include legal expenses and the expenses of the circuit court proceeding. The Commission ruled that Dr. Hernandez could not recover attorney's fees because the Board had been substantially justified in denying his application. The circuit court on appeal reversed the Commission's decision and remanded the case to the Commission to determine Dr. Hernandez' expenses. The Board now appeals the circuit court's decision.

## STANDARD OF REVIEW

 Section 536.140 defines the scope of appellate review. The findings and conclusions of the Commission are reviewed rather than the judgment of either the circuit court or the underlying decision of the Board. *City of Cabool v. Missouri State Bd. Of Mediation*, 689 S.W.2d 51, 53 (Mo. banc 1985); *State Bd. Of Registration of Healing Arts v. De Vore*, 517 S.W.2d 480 (Mo.App. 1974); Section 161.332, RSMo 1995; *Cf. State Bd. Of Registration for Healing Arts v. Masters*, 512 S.W.2d 150 (Mo.App.1974)(Commission and subsequent Board disciplinary decision treated as one decision and the reviewing court may consider either). The Commission's decision is presumed valid, and the burden is on the attacking party to overcome that presumption. *State ex rel. Dyer v. Public Service Comm'n*, 341 S.W.2d 795, 800 (Mo.1960), *cert. denied*, 366 U.S. 924, 81 S.Ct. 1351, 6 L.Ed.2d 384 (1961). The reviewing court does not substitute its judgment on factual matters for that of the Commission's. *EBG Health Care III, Inc. v. Missouri Dep't of Social Services*, 882 S.W.2d 143, 145 (Mo. App.1994). Under section 621.193, the decision of the Commission is affirmed if it is supported by the law and competent and substantial evidence on the whole record and is not clearly contrary to reasonable expectations of the General Assembly. *Oakland Park Inn v. Director of Revenue*, 822 S.W.2d 425 (Mo. banc 1992). Appellate review is also limited to those matters raised in the petition for review. *Ross v. Robb*, 651 S.W.2d 680 (Mo.App.1983), *transferred*, 662 S.W.2d 257 (Mo. banc 1983).

## I. JURISDICTION OF THE COMMISSION TO REVIEW DR. HERNANDEZ' APPLICATION FOR ATTORNEY'S FEES AND EXPENSES

Dr. Hernandez claims that the Commission erred in denying his application for attorney's fees and expenses. He contends that the Commission's decision was unlawful, unsupported by competent evidence, or was arbitrary and capricious in that:

(1) The Board was not substantially justified in denying Dr. Hernandez' application;

(2) The Board failed to prove that the Licensure Committee's decision was substantially justified;

(3) The Commission concluded as a matter of law that it lacked jurisdiction to award fees and expenses incurred while before the Circuit Court; and

(4) The Commission concluded as a matter of law that it lacked jurisdiction to award fees and expenses incurred while appealing the denial of the award of fees.

Points three and four of Dr. Hernandez' brief concern the Commission's conclusion that it lacked jurisdiction to award attorney's fees incurred in defending the Board's appeal to the circuit court and in filing this fee case. Section 536.087.1 provides for the award of reasonable fees and expenses to a prevailing party in a civil action or agency proceeding. It states:

A party who prevails in an agency proceeding or civil action arising therefrom, brought by or against the state, shall be awarded those reasonable fees and expenses incurred by that party in civil action or agency proceeding, unless the court or agency finds the position of the state was substantially justified or that special circumstances make an award unjust.

A. Fees incurred in defending the Board's appeal to the circuit court

 Dr. Hernandez sought to recover attorney's fees expended in defending the Board's appeal to the circuit court as well as

those fees expended in the agency proceeding before the Commission. The Commission, however, found that it lacked jurisdiction to award fees incurred in a proceeding before the circuit court.

Section 536.087.4 provides that in an agency proceeding, the prevailing party shall submit its application for fees and expenses to the administrative body before which the party prevailed. In this case, the Board denied Dr. Hernandez' application for a license to practice medicine in Missouri. Following a hearing before the Commission, the Board's decision was reversed on October 8, 1993, and it was ordered by the Commission to issue Dr. Hernandez a license. Dr. Hernandez then filed his application for attorney's fees with the Commission on November 5, 1993, within the thirty-day time period required by section 536.087.3. Dr. Hernandez correctly filed his application for fees with the Commission, the administrative body before which he prevailed, and the Commission had jurisdiction to review the fee application.

■ The fact that the Board appealed the Commission's decision in the underlying adversary proceeding did not defeat the Commission's jurisdiction to review Dr. Hernandez' application for attorney's fees. Section 536.087.4 continues:

> When the state appeals the underlying merits of an adversary proceeding, no decision on the application for fees and other expenses in connection with that adversary proceeding shall be made under this section until a final and unreviewable decision is rendered by the court on the appeal or until the underlying merits of the case have been finally determined pursuant to the appeal.

Section 536.087.4 connotes that administrative bodies retain authority to make fee awards in underlying administrative proceedings that have been appealed to the circuit court for judicial review. The Commission, therefore, retained jurisdiction over Dr. Hernandez' fee case even after the underlying proceeding was appealed, and it had authori-

ty to award fees incurred during the circuit court proceeding if it found that the Board's position throughout the underlying case was not substantially justified. See Dole v. Phoenix Roofing, Inc., 922 F.2d 1202, 1208–09 (5th Cir.1991)(interpreting the Equal Access to Justice Act, 5 U.S.C. § 504(a)(2), the federal statute after which section 536.087 was patterned). The Commission's finding that it did not have jurisdiction to award fees incurred before the circuit court in the appeal from the underlying agency proceeding was error.

■ This error, however, does not require a reversal of the Commission's decision or a remand of the case to the Commission for a finding regarding whether Dr. Hernandez may recover fees incurred during proceedings before the circuit court. Because the Board was substantially justified in denying Dr. Hernandez' application to practice medicine in Missouri and in defending its denial during the adversary proceedings (See discussion under sections III, IV, and V of this opinion below), Dr. Hernandez may not recover his attorney's fees expended throughout the entire underlying case.

B. Fees incurred in filing this fee case

■ Dr. Hernandez also sought to recover attorney's fees incurred in filing this fee case. The Commission, however, found that section 536.087 does not allow for the recovery of attorney's fees incurred in seeking attorney's fees for an underlying civil action or agency proceeding. It explained that the definition of "agency proceeding" in section 536.085(1) which excludes "proceedings for determining the eligibility or entitlement of an individual to a monetary benefit" precluded a prevailing party from recovery fees expended in bringing a claim for fees. The issue of whether fees incurred in seeking to recover fees under section 536.087 has not yet been addressed in Missouri, and review of the Equal Access to Justice Act (EAJA), the federal statute after which section 536.087 was patterned, and the federal cases interpreting the EAJA is helpful.

■ The purpose of the EAJA as well as section 536.087 is "to require agencies to

carefully scrutinize agency and court proceedings and to increase accountability of the administrative agencies." *White v. Missouri Veterinary Medical Bd.*, 906 S.W.2d 753, 755 (Mo.App.1995). The statutes were designed "to encourage relatively impecunious private parties to challenge abusive or unreasonable government behavior by relieving such parties of the fear of incurring large litigation expenses." *Id.* They were enacted to eliminate for the average person the financial disincentive to challenge unreasonable government actions. *Commissioner, Immigration and Naturalization Service v. Jean*, 496 U.S. 154, 163, 110 S.Ct. 2316, 2321, 110 L.Ed.2d 134 (1990).

■ Refusing to award attorney's fees for the time spent in obtaining attorney's fees for the underlying agency proceeding or civil action would thwart the purpose of the EAJA and section 536.087. Prevailing parties may choose not to vindicate their rights against offensive government action if they believe that the cost of litigating fee disputes would equal or exceed the cost of litigating the merits of the underlying cases. Section 536.087, therefore, provides compensation to a prevailing party in an action against the state for all aspects of a litigation with the state, including fees and expenses incurred in seeking fees, if the state's position in the action was not substantially justified. *See Jean*, 496 U.S. at 163–66, 110 S.Ct. at 2321–23; *Spurlock v. Sullivan*, 790 F.Supp. 979, 982 (N.D.Cal.1992). The Commission, therefore, erred in finding that section 537.087 does not allow for an award of attorney's fees incurred in seeking attorney's fees for an underlying agency proceeding or civil action.

■ As in section IA above, this error does not require a reversal of the Commission's findings in this case or a remand of the case to the Commission. Although Dr. Hernandez prevailed in the underlying adversary proceedings, the Board was substantially justified in denying Dr. Hernandez' application

for a license to practice medicine and in defending its denial (See discussion under sections III, IV, and V of this opinion below), and Dr. Hernandez is precluded from recovering an award of his attorney's fees incurred in seeking and ultimately obtaining his license. A second finding that the state's position in the fee litigation itself was substantially justified is not required. *Jean*, 496 U.S. at 160, 110 S.Ct. at 2319–20. The United States Supreme Court has cautioned that "a request for attorney's fees should not result in a second major litigation." *Id.* (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983)).

## II. THE COMMISSION'S DECISION WAS LAWFUL

### A. Denial of Attorney's Fees

■ Dr. Hernandez claims the Commission's action denying attorney's fees was procedurally unlawful or otherwise unauthorized by law. Mo. Const. Art. V, Sec. 18; *State ex rel. Utility Consumers Council, Inc. v. Public Service Comm'n*, 585 S.W.2d 41, 47 (Mo. banc 1979). The Commission functions in the same role as an administrative hearing officer authorized to hear contested cases within an agency and is intended by the legislature to render the final administrative decision of the agency. *J.C. Nichols Co. v. Director of Revenue*, 796 S.W.2d 16, 20[7] (Mo. banc 1990); *Lederer v. State, Department Of Social Services, Div. Of Aging*, 825 S.W.2d 858, 862 (Mo.App.1992). The Commission is authorized to conduct a hearing on the qualifications of the applicant and to make its findings of fact and conclusions of law on the issues of whether the applicant is entitled to examination for licensure and decides only whether the applicant is entitled to examination or licensure under the law.[4] *State Bd. Of Registration for Healing Arts v. Masters*, 512 S.W.2d 150, 161 (Mo.App.1974); *State Bd. Of Registration for Healing Arts v.*

---

4. Section 621.045 states that "[t]he administrative hearing commission shall conduct hearings and make findings of fact and conclusions of law

in those cases when, under the law, ... an agency refuses to permit an applicant to be examined upon his qualifications...."

*De Vore,* 517 S.W.2d 480 (Mo.App.1974). This function is not discretionary but must be exercised when the Board denies an application for licensure and receives complaint of the applicant. *Id.* at 485.

### B. The Board Properly Exercised Its Authority

■ The remaining issues concern the interplay of duties between the Board and its Licensure Committee. Dr. Hernandez argues that the nine-member Board delegated its authority to the four-member Licensure Committee in violation of section 334.100.1 that states, "the board may refuse to issue or renew any ... license." Dr. Hernandez argues, and the circuit court agreed, that the Board had unlawfully delegated its duty under section 334.100.1 to the Licensure Committee by merely "rubber-stamping" the committee's decision when the Board met.[5] Dr. Hernandez complains the Board, the only entity authorized to deny or approve the application, did not make the decision.

The Licensure Committee consisted of four Board members, which, under section 334.100.1, is enough to constitute a quorum of the full Board. Although the Commission did not determine that the Committee meeting was a Board meeting, the point is relevant. Four members out of the nine-member board constituted a quorum under which the Board could act. The Board's reliance on the Licensure Committee's recommendation was reasonable and substantially justified. Additionally, the record supports the conclusion that the Licensure Committee's recommendation was merely advisory. The Committee's recommendation was entitled to as much weight as the Board chose to give it. The allocation of the weight given to the evidence before the Board was within the discretion of the Board. The record shows that on December 18, 1992, the Board exercised its power when it unanimously voted to deny the application. This Court finds the Board's activity through its Licensure Committee and its consideration of the Licensure Committee's request was lawful.

### III. THE COMMISSION'S DECISION WAS SUPPORTED BY SUBSTANTIAL AND COMPETENT EVIDENCE

■ "Substantial evidence" is evidence that, if believed, has probative force upon issues. *Tadrus v. Missouri Bd. Of Pharmacy,* 849 S.W.2d 222 (Mo.App.1993). The whole record is to be considered. *Missouri Bd. Of Registration for the Healing Arts v. Levine,* 808 S.W.2d 440 (Mo.App. 1991). The state's position need not be correct or even highly justified, but it must have a clearly reasonable basis in fact and law. *St. Joseph State Hosp. v. Soliday,* 861 S.W.2d 145, 147 (Mo.App.1993). The state's position must be in good faith and capable of being reached by a reasonable person. *Id.*

■ The Commission contemplated the Board's argument that its decision was substantially justified because the Board believed Dr. Hernandez lied on his application in order to hide his termination from the residency program. The Board listed a litany of grounds for refusing to approve his application. These were that he was not of good moral character; used fraud, deception, or misrepresentation to secure a license; engaged in dishonesty and misrepresentation in performance of the functions and duties of a doctor; violated a provision of Chapter 334 or a regulation promulgated thereunder; and knowingly made a false statement in a document executed in connection with the practice of medicine. While the Commission

---

**5.** Courts have held that even an "[a]doption of a trial examiner's findings and conclusions does not necessarily mean that the Board has abdicated in favor of mental processes extrinsic to its own. *Pittsburgh S.S. Co. v. NLRB,* 167 F.2d 126, 128 (6th Cir.1948), *rev'd on other grounds,* 337 U.S. 656, 69 S.Ct. 1283, 93 L.Ed. 1602 (1949). As Judge Burger, later, Chief Justice Burger,

stated, '[i]t is not for the courts', short of flagrant extremes, to tell the administrative agencies how long they must ponder before coming to a decision." *Florida Economic Advisory Council v. FPC,* 251 F.2d 643, 648 (D.C.Cir.1957), *cert. denied,* 356 U.S. 959, 78 S.Ct. 996, 2 L.Ed.2d 1066 (1958).

found insufficient evidence to conclude that Dr. Hernandez intentionally misled the Board after a full hearing on the issues, the Board itself did not have the benefit of a full hearing.[6] The procedural due process requirement of fair trials by fair tribunals applies to administrative agencies acting in an adjudicative capacity. *Withrow v. Larkin*, 421 U.S. 35, 46, 95 S.Ct. 1456, 1464, 43 L.Ed.2d 712 (1975); *Wagner v. Jackson County Bd. of Zoning Adjustment*, 857 S.W.2d 285 (Mo.App.1993)(citing *Fitzgerald v. City of Maryland Heights*, 796 S.W.2d 52, 59 (Mo.App.1990)). The Board's action, however, was not an adjudicative function but rather an initial denial for a license. Dr. Hernandez does not argue that procedure was flawed in the Commission's hearing.

While the Commission acknowledged that the Board made its determination without a full hearing on the issues, it determined that because the Licensure Committee's recommendation was substantially justified, the Board's decision was consequently substantially justified. The Commission found that the Board's reliance on its staff or member's recommendations was consistent with the functions of the Board. The Commission had sufficient and competent evidence before it that the Board was substantially justified in its position.

## IV. THE COMMISSION'S DECISION WAS NOT ARBITRARY, CAPRICIOUS OR UNREASONABLE

■ The Board was authorized to deny the application and did so by a proper vote. Even if the full nine member Board did not discuss or contemplate the application, the Licensure Committee took diligent steps to investigate the apparent discrepancies in Dr. Hernandez' application. The Licensure Committee requested and obtained a personal interview with Dr. Hernandez, a procedure not normally done. Dr. Hernandez was af-

forded an audience before four members of the Board, the Licensure Committee.

■ The question then becomes whether the Board's decision, based on the Licensure Committee's recommendation and Dr. Hernandez' completed application form and accompanying letters, was arbitrary, capricious, and unreasonable. Under these circumstances regarding such highly specialized criteria such as the medical practice together with the significant numbers of applicants that make application, the Commission's conclusion that the Board's actions were substantially justified is reasonable. This Court will not substitute its judgment for that of the Commission on the general sufficiency of the application process when these issues are within the realm of the agency's expertise. *State ex rel. Missouri Public. Service Co. v. Pierce*, 604 S.W.2d 623, 625 (Mo.App.1980).

The record reveals that the Board had been given the estimated thirty pages of Dr. Hernandez' application materials three weeks prior to the December 18, 1992 vote. The record does not state the exact number of applications submitted, but Dr. Hernandez' application was but one of many that the Board considered during its meeting. In contrast to the other applications, the Board also considered the recommendation of the Licensure Committee that had personally interviewed Dr. Hernandez and heard his explanations to the apparent discrepancies on his application.

In addition to the recommendation of the Committee, sufficient evidence was presented in Dr. Hernandez' application to raise the issue for the Board of whether Dr. Hernandez had violated section 334.100.1. A reasonable reading of "Question 22" would expect that a resident intern, who had been told that he had not made sufficient progress in the program such that he would no longer be

---

6. The Board is statutorily unauthorized to conduct evidentiary hearings when considering the qualifications of applicants for licensure. *State Bd. of Registration for Healing Arts v. Finch*, 514 S.W.2d 608 (Mo.App.1974) (Per Wasserstrom, J.,

with two Judges concurring and two Judges specially concurring.). Upon the board issuing a denial of an application, the hearing on qualification is to be held by the Commission, on complaint of the applicant. *Id.*

allowed to participate, would be required to answer "yes." The question asked specifically if Dr. Hernandez had ever had "privileges suspended, been put on probation or ever been requested to withdraw from any licensed hospital care facility ... in which you have trained ... ?" The Board was aware that Dr. Hernandez was terminated from the anesthesiology program before the first of three years was completed because he was not progressing satisfactorily and reasonably concluded that he should have answered "yes" to "question 22."

## V. THE COMMISSION'S DECISION WAS NOT AN ABUSE OF DISCRETION

The Commission's determination that the Board was substantially justified in its decision was within the Commission's authority. The evidence showed that Dr. Hernandez received much greater scrutiny from the Board than the typical applicant receives. The application could have been denied based on the documents before the Board without the recommendation of the Licensure Committee. The Board however, though not required, provided Dr. Hernandez an opportunity to answer the questions posed by the Committee. The fact that Dr. Hernandez was essentially afforded more consideration than the typical applicant is not a basis to claim that the Board acted in an arbitrary and capricious manner. A reasonable basis existed for the Commission to conclude that the Board was substantially justified in denying Dr. Hernandez' application for a license to practice medicine, and the Commission properly denied Dr. Hernandez attorney's fees.

The judgment of the trial court reversing the decision of the Administrative Hearing Commission is reversed, and the decision of the Administrative Hearing Commission denying Dr. Hernandez attorney fees is affirmed.

All concur.