

# In the
# Missouri Court of Appeals
## Western District

| | |
|---|---|
| SAXONY LUTHERAN HIGH SCHOOL, INC., ET AL., | ) |
| | ) |
| | ) WD78187 |
| Respondents, | ) |
| | ) OPINION FILED: October 13, 2015 |
| v. | ) |
| | ) |
| MISSOURI LAND RECLAMATION COMMISSION, ET AL., | ) |
| | ) |
| | ) |
| Appellant. | ) |

**Appeal from the Circuit Court of Cole County, Missouri**
The Honorable Daniel R. Green, Judge

Before Division Four: Alok Ahuja, Chief Judge, Presiding, Gary D. Witt, Judge and
S. Margene Burnett, Special Judge

This is the second appeal stemming from an application for a permit to operate a limestone mine. Here, the State, on behalf of the Missouri Land Reclamation Commission ("Commission"), challenges the trial court's award of attorney fees and expenses following judgment in favor of Saxony Lutheran High School, Inc. ("Saxony") and Save Our Children's Health, Inc. ("SOCH") (collectively, "Respondents"). The State argues that the award of attorney fees did not satisfy the three required elements of

Section 536.087.[1]  Alternately, the State alleges error in the calculation of the amount of attorney hours and in the calculation of the attorneys' hourly rates.  For reasons explained below, we reverse the trial court's award of attorney fees and expenses and therefore do not reach the alleged error as to the calculation of the award.

## Facts and Procedural History[2]

Heartland Materials, LLC ("Heartland") is a company in the business of mining limestone.  On October 4, 2010, Heartland submitted a limestone mining permit application to the staff director ("Director") of the Commission for a proposed 161-acre limestone quarry.  Saxony is an incorporated and accredited private Lutheran high school located just north of, and adjacent to, the proposed quarry.  SOCH is a Missouri not-for-profit corporation organized to enhance and protect the health, safety, and livelihood of the members in the community from the impact of open quarry activities and has members that live near the proposed Heartland quarry site.

On January 5, 2011, the Director recommended that Heartland's land reclamation permit be issued.  Respondents timely opposed Heartland's requested permit and, pursuant to Section 444.773.3[3] of the Missouri Land Reclamation Act, requested a public meeting.  Heartland did not agree to a public meeting.  The Director then referred the matter to the Commission for a formal public hearing.

On January 27, 2011, before granting the formal public hearing, the Commission held a meeting to determine whether Saxony and SOCH possessed standing to be entitled

---

[1]All statutory references are to RSMo (Cum. Supp. 2011) unless otherwise indicated.
[2]Portions of the facts and procedural history are adopted from *Saxony Lutheran High School, Inc. v. Missouri Land Reclamation Commission*, 392 S.W.3d 52 (Mo. App. W.D. 2013), without further attribution.
[3]The Act was amended 2014, and those amendments are not at issue.

2

to a formal public hearing.[4]   At this meeting, the Commission permitted the parties to present evidence on the topic of whether Respondents had provided "good faith evidence of how their health, safety, or livelihood will be unduly impaired by the issuance of the permit," in accordance with the requirements for standing found in 10 CSR 40-10.080(2). There were videotapes played of comments of speakers, live testimony from individuals associated with Respondents and with Heartland, and several speakers addressing the issues of health, safety and livelihood.  Those who opposed the permit stood and stated their position; they were not always questioned by lawyers, and they were not cross-examined by lawyers for Heartland.  Similarly, those who spoke on behalf of Heartland were not directly examined by their attorneys, and they were not cross-examined.  None of the witnesses were under oath.

On February 7, 2011, the Commission conducted a conference call.   The Commission decided that neither Saxony nor SOCH had provided good faith evidence of how its health, safety, or livelihood would be unduly impaired by the issuance of the surface mining permit to Heartland and therefore the Commission refused to conduct a formal public hearing.   The Commission then issued a surface mining permit to Heartland, which began mining activities.  The Commission had counsel present at the January 27, 2011 meeting and the February 7, 2011 proceeding.

On March 7, 2011, Respondents filed a timely Petition for Judicial Review and Declaratory Judgment against the Commission in the Circuit Court of Cole County in

---

[4]At this same meeting, the Commission heard evidence on whether Respondents had standing to request a formal public hearing regarding the permit application from J.W. Strack ("Strack"), another potential quarry operator.  The Strack quarry would be located north of Saxony Lutheran High School.  The Commission found that Respondents did possess standing sufficient to hold a formal public hearing as to the Strack permit.

3

which Heartland intervened. Respondents filed the petition under Section 536.150, which is the statute setting out review of non-contested cases. Key to this appeal, Respondents prayed for a declaration that Saxony and SOCH had presented evidence sufficient to establish standing pursuant to Section 444.773.3 and 10 CSR 40-10.080(2) so as to be entitled to a formal public hearing.

In a motion for summary judgment, Respondents set forth the evidence that they had presented to the Commission on January 27, 2011, and *also* presented to the trial court additional evidence regarding the issue of their standing, which included depositions taken after the January 27, 2011 meeting. The trial court determined that it had jurisdiction over the matter under Section 536.150. It entered summary judgment in favor of Respondents, concluding as a matter of law that Saxony and SOCH had established standing. It further directed the Commission to conduct a formal public hearing as required under Section 444.773.3 and in accordance with 10 CSR 40-10.080.

The Commission and Heartland appealed the trial court's judgment to this Court. In affirming the trial court's judgment, we noted "[o]nce the petitioners establish standing, they are entitled to a formal public hearing before the Commission." *Saxony Lutheran High Sch., Inc. v. Mo. Land Reclamation Comm'n*, 392 S.W.3d 52, 57 (Mo. App. W.D. 2013) (hereafter "*Saxony I*"). After a review of the record, we held that Saxony and SOCH established standing by providing sufficient good faith evidence that high school students and residents near the proposed quarry sites would face an increased risk of incurring or worsening respiratory illnesses if the quarry permit were issued. *Id.* at 59. We concluded as a matter of law that Saxony and SOCH provided good faith

4

evidence of a future undue impairment sufficient to establish standing, and we directed the Commission to conduct a formal public hearing under Section 444.773. *Id*. at 59-60. In an unpublished order that accompanied the opinion, we noted that we were without jurisdiction to rule on Respondents' motion for attorney fees and remanded that matter to the trial court.[5]

On remand, the Missouri Department of Natural Resources retained a hearing officer to conduct a formal public hearing based on our holding in *Saxony I*. Before the formal public hearing took place, Respondents and Heartland reached a settlement agreement that rendered the hearing unnecessary and jointly filed a stipulation for dismissal. The settlement agreement placed restrictions on Heartland that the Commission did not have the authority to require, including terms such as blasting times, providing notice to the school of intent to blast, and signage. In the settlement agreement, Heartland acknowledged that the obligations and requirements in the agreement are "over and above existing obligations" imposed by various permits, including through the Commission. As required in the settlement, Respondents withdrew their formal public hearing demand, terminating their challenge to the permit. The State was not a party to the settlement agreement.

On October 8, 2013, in the circuit court, Respondents again filed an Application for Award of Attorney's Fees and Expenses relating to all proceedings before the Commission, the trial court, and the first appeal to this court, *Saxony I*. On July 17, 2014,

---

[5]In that order, we indicated that the award of attorney fees appeared appropriate and remanded the case back to the trial court for a ruling on that issue at the completion of the action. Now that the issue has been fully briefed by the parties for our review, as set forth *infra*, it is clear that attorney fees are not appropriate under the statute as applied to the facts of this case.

the Circuit Court of Cole County held a bench trial on the Application for Award of Attorney's fees. Bill Zeaman ("Zeaman"), the chief of the non-coal unit for the Department of Natural Resources and Land Reclamation Program, testified about the permitting process and the contents of the settlement agreement.

On July 31, 2014, the court submitted Findings of Fact, Conclusions of Law, Order and Judgment on Saxony and SOCH's Application for Award of Attorney's Fees and Expenses, sustaining the Application and ordering Heartland and the Commission to pay Respondents' attorney fees and expenses. The Commission appeals. Further facts are set forth as necessary.

**Standard of Review**

Under Section 536.087.7, where fees and expenses are awarded to a prevailing party, we

> may modify, reverse or reverse and remand the determination of fees and other expenses if the court finds that the award or failure to make an award of fees and other expenses, or the calculation of the amount of the award, was arbitrary and capricious, was unreasonable, was unsupported by competent and substantial evidence, or was made contrary to law or in excess of the court's jurisdiction.

Though we ordinarily will defer to findings of fact based on the credibility of witnesses, we will review *de novo* any questions of law raised by the application for attorney fees, including questions of law as to statutory interpretation. *Garland v. Ruhl*, 455 S.W.3d 442, 446 (Mo. banc 2015) (citation omitted).

**Analysis**

Section 536.087.1 provides for an award of attorney fees and expenses only in "an agency proceeding or civil action arising therefrom." "Agency proceeding" is defined by statute as "an adversary proceeding in a contested case pursuant to this chapter in which the state is represented by counsel. . . ." § 536.085(1). "Contested case" is also defined by statute as "a proceeding before an agency in which legal rights, duties or privileges of specific parties are required by law to be determined after hearing." § 536.010(4).

Classifying a case as "contested" or "non-contested" is a matter of law. *City of Valley Park v. Armstrong*, 273 S.W.3d 504, 506 (Mo. banc 2009). "Contested cases provide the parties with an opportunity for a formal hearing with the presentation of evidence, including sworn testimony of witnesses and cross-examination of witnesses, and require written findings of fact and conclusions of law. *Id*. (citing *Hagely v. Bd. of Educ*., 841 S.W.2d 663, 668 (Mo. banc 1992)); *see also* Section 536.070. Put another way, in addition to the requirement of a hearing, contested cases also require a "measure of procedural formality," such as "notice to all necessary parties, oral evidence presented under oath or affirmation and subject to cross-examination, use of exhibits, adherence to evidentiary rules, a record preserving the proceedings and written decisions with findings of fact and conclusions of law." *Lipic v. State of Mo.*, 93 S.W.3d 839, 842 (Mo. App. E.D. 2002). Review of a contested case by the trial court constitutes a review of the record created before the administrative body. *Valley Park*, 273 S.W.3d at 506. Contested case review is controlled by Section 536.140. The trial court's decision is

7

appealable, but the appellate court also looks back to the record of the administrative body. *Valley Park*, 273 S.W.3d at 506 (citation omitted).

In contrast, non-contested cases do not require formal proceedings or hearings before the administrative body. *Id.* As such, there is no record required for review. *Id.* In reviewing a non-contested decision, the circuit court does not review the administrative record, but hears evidence, determines facts, and adjudges the validity of the agency decision. *Id.* Under Section 536.150.1, the trial court conducts such a hearing as an original action. *Id.* Put another way, the petition for review of a non-contested case, "whether by writ or other action, constitutes an original proceeding, involves a determination of facts *de novo*, and on that evidence yields an independent judgment as to the lawfulness of the agency decision." *Phipps v. Sch. Dist. of Kansas City*, 645 S.W.2d 91, 96 (Mo. App. W.D. 1982).

Further, "[t]he relevant inquiry is not whether the agency actually held an 'adversary proceeding in a contested case,' but whether it was required to do so by statute, ordinance, or constitutional provision." *Lipic*, 93 S.W.3d at 841 (quoting *State ex rel. Yarber v. McHenry*, 915 S.W.2d 325, 328 (Mo. banc 1995)). Additionally, the Supreme Court recently reiterated that there "is ample evidence" that the legislature intended for Section 536.087 to apply only if the State is a ***party*** to the "agency proceeding." *Garland*, 455 S.W.3d at 447. "Parties can be 'represented by counsel,' not adjudicators." In short, the State "cannot have 'lost the agency proceeding' unless it was a party to the agency proceeding.'" *Id.*

8

In determining whether an "adversary proceeding in a contested case" was required here, we find *Painter v. Missouri Commission on Human Rights*, 251 S.W.3d 408 (Mo. App. W.D. 2008) instructive. There, the appellant petitioned for writ of mandamus pursuant to Rule 94.01 and Section 536.150 against the Commission on Human Rights and its director. The appellant alleged that the Commission had wrongfully closed its file concerning his complaint of discrimination without conducting an investigation, making a determination as to whether probable cause existed to credit his complaint, or issuing him a right to sue letter. *Id.* at 409. The circuit court determined that the Commission "arbitrarily" refused to perform its statutory and regulatory duties in part by failing to investigate or make a probable cause determination. The court ordered the Commission to provide a right-to-sue letter. *Id*.

The *Painter* appellant subsequently sought attorney fees under Section 536.087. *Id*. The Commission argued that the appellant had not prevailed in an "agency proceeding" and therefore had no right to an award. The appellant contended that "after conducting multiple hearings on the record and reviewing sworn testimony and other evidence, the trial court ultimately granted summary judgment" to him and ordered the issuance of the right-to-sue letter. *Id.* at 411. We determined that we are required to apply the statutory definition of "contested case," not a colloquial meaning. *Id.* We noted precedent indicating that a hearing is required and the case would be a contested one if probable cause were found, conciliation failed, and the Commission proceeded with enforcement. *Id.* at 412. However, the Commission's prior investigation and probable cause determinations were not contested cases. Our determination was

9

reinforced by the appellant's mandamus petition, which sought review from the trial court under Section 536.150, which is the statute setting out review only of non-contested cases. *Id.*

In the case at bar, the Director had reviewed Heartland's application for a permit to operate a limestone quarry on property adjacent to Saxony. Under Section 444.772, the Director was required to make a recommendation to the Commission to issue or deny the permit. The Director recommended that a permit be issued. Following submission of the recommendation, Respondents requested an opportunity for a hearing before the Commission to show that issuance of the permit would unduly impair their health, safety, or livelihood -- in other words, Respondents sought to establish standing pursuant to 10 CSR 40-10.080(2)(A). To obtain a formal public hearing, Respondents were required to establish standing in good faith.

At the meeting held pursuant to 10 CSR 40-10.080(2)(A) on January 27, 2011, Heartland and Respondents presented information to the Commission. As noted above, at that hearing, there were videotapes of comments from speakers and live testimony from individuals addressing the issues of health, safety, and livelihood. Those who opposed the permit stood and made statements; they were not always questioned by lawyers, and they were not cross-examined by lawyers for Heartland. Similarly, those who spoke on behalf of Heartland were not directly examined by their attorneys, and they were not cross-examined. None of the witnesses for either side were under oath. An attorney was present at the hearing acting on behalf of the Commission. The procedural requirement that oral evidence shall be taken "only" on oath or affirmation pursuant to

10

Section 536.070(1) was not followed. Although we later determined that the Commission's ruling as to standing was in error, there is no real question that the hearing conducted regarding standing was informal.

Indeed, that there was no *formal hearing* necessary to determine standing under the regulation at issue is evident in the title of the CSR that governed the matter: "Establishing Standing *for a* Formal Public Hearing" (emphasis added). 10 CSR 40-10.080(2)(A) goes on to state that "For a formal public hearing to be granted by the Land Reclamation Commission, the petitioner must first establish standing." Additionally, we recognized in *Saxony I* that Heartland and the Commission may wish to challenge the "veracity and persuasive force of this good faith evidence, [but that] this is not the stage of the process to do so." 392 S.W.3d at 59 n.10. "That the veracity or persuasive force of this evidence may be challenged is a topic for a *formal public hearing*, where the permit applicant will bear the burden of persuasion after the petitioner has satisfied its burden of production in establishing issues of fact." *Id*. (emphasis added).

That the dispute over standing was an "non-contested case" is additionally evident in the parties' and in the trial court's treatment of the issue throughout *Saxony I*. Respondents filed their action under Section 536.150, the trial court determined that it had jurisdiction under Section 536.150, additional evidence was presented to the trial court beyond what was presented at the hearing before the agency, and both parties sought review to this court under Section 536.150. *See Painter*, 251 S.W.3d at 412 (holding that throughout the proceedings, the appellant was aware that the judicial proceeding arose out of a non-contested case, in part because he alleged as much in his

11

mandamus petition, and in part because during litigation he conducted discovery and submitted new evidence to the trial court).

Finally, the State was never a **party** to the "agency proceeding." *Garland*, 455 S.W.3d at 447. "Parties can be 'represented by counsel,' not adjudicators." *Id.* at 448. Here, the extent of the State's involvement in this case was in the role of adjudicator in the decision of whether Respondents had standing. Although the State had counsel present at the hearing on whether Saxony and SOCH had standing, it is evident that the agency merely received testimony from numerous individuals in making this preliminary determination and did not participate as a party.

In so holding, we reject Respondents' arguments that the action at hand is a contested case because "when considered in its entirety, the underlying proceeding before the Land Reclamation Commission was a 'contested case.'" Respondents contend that "the focus" of Section 444.773 "required that there be various public hearings," all of which were required to be based on competent and substantial scientific evidence on the record so as to trigger review of a contested case under Section 536.140. Respondents further argue that Section 444.773 "in various places, used, interchangeably, the phrases 'hearing as provided in sections 444.760 to 444.790,' 'public meeting or hearing,' formal public hearing,' 'public hearing to formally resolve,' and 'any public hearing.'"

A review of the relevant statute, regulation, and our summary of the proceedings governing land permits in *Saxony I* belies this argument. In *Saxony I*, we explicitly delineated the procedure for the issuance of land reclamation permits. 392 S.W.3d at 57. We noted that that Section 444.530 states that the Commission may "[a]dopt and

12

promulgate rules and regulations respecting the administration of sections 444.500 to 444.789." *Id.* Those rules and regulations are found at 10 CSR 40-10.080. Subsection 1 describes the "public meeting" process that is conducted by the Director. Subsection 2 describes the rules for establishing standing for a formal public hearing. Subsection 3 describes the "formal public hearing" process conducted by the Commission. Subsections 4 through 6 encompass procedures not relevant to this cause. There is no indication in the statute or regulation that standing must be established by "competent and substantial evidence"; Section 444.773.4, on which Respondents rely, refers to "competent and substantial evidence" only as to the issuance or denial of a permit and does not encompass standing.

Even when considered "in its entirety," as Respondents urge, there is no way to view the agency determination of standing, nor of any other meeting or hearing from the issuance of this permit, as fitting within the definition of a contested case, which, as noted above, provides the parties "with an opportunity for a ***formal hearing*** with the presentation of evidence, including sworn testimony of witnesses and cross-examination of witnesses." *Valley Park*, 273 S.W.3d at 506 (emphasis added). It is from the Commission's ruling regarding Respondents' standing that the civil proceeding arose. The reversal on the issue of standing was as a non-contested case and was nothing more than a preliminary determination regarding what might have later become a contested case had the issues not been resolved by the parties. *See Painter*, 251 S.W.3d at 412.

Point I is granted.

## Conclusion

The judgment awarding attorney fees and costs is reversed.


_____
Gary D. Witt, Judge


All concur