

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

MISSOURI REAL ESTATE )
COMMISSION, )
                Respondent, )
) WD81769
v. )
) FILED: May 28, 2019
WILLIAM L. HELD, )
                Appellant. )

**Appeal from the Circuit Court of Cole County**
**The Honorable Jon E. Beetem, Judge**

**Before Division Two: Cynthia L. Martin, P.J., and**
**Alok Ahuja and Gary D. Witt, JJ.**

William Held applied for a real estate salesperson license in October 2015. The Missouri Real Estate Commission denied his application because Held had a number of felony criminal convictions for offenses involving dishonesty and moral turpitude. Held applied for review by the Administrative Hearing Commission ("AHC"). Following an evidentiary hearing, the AHC granted Held's application for licensure, subject to a three-year term of probation. The Real Estate Commission petitioned for judicial review in the Circuit Court of Cole County. The circuit court reversed the AHC's decision, finding that it was in excess of the AHC's statutory authority, and that it was unsupported by competent and substantial evidence. Held appeals. We reverse the circuit court's judgment and reinstate the AHC's decision granting Held a probated license.

**Factual Background**

Held began working for Camden Properties, LLC, d/b/a Keller Williams Realty West, in July 2015. He worked under a real estate agent in the office, handling the agent's administrative duties and marketing. In October 2015, Held applied to the Real Estate Commission for a real estate salesperson license. Before applying, Held had passed the Missouri real estate salesperson examination and had completed all of the required coursework to obtain a license.

Held has an extensive criminal history. Between 1998 and 2014, he pleaded guilty to, and was convicted of, twenty-one felonies. The felonies included drug possession and trafficking offenses; stealing; receiving stolen property; unlawful possession of a weapon; and resisting arrest. He was on probation for several of those offenses at the time he applied for his real estate salesperson license.

On February 23, 2016, the Real Estate Commission denied Held's license application. Based on his numerous criminal convictions, the Commission concluded that Held lacked the requisite moral character, reputation for honesty, integrity and fair dealing, and competency to transact the business of a real estate salesperson in a manner which protected the interests of the public.

On February 26, 2016, Held filed a complaint with the AHC, seeking review of the Real Estate Commission's decision. A hearing was held before an AHC Commissioner on March 15, 2017. At the hearing, Held testified that all of his criminal convictions were related in some manner to his substance abuse problems, which began when he was prescribed opioid pain medication following an injury playing college football. Held testified that he had been drug-free since July 2013, and described the various drug treatment programs in which he had participated, and in which he continued to participate. At the time of the hearing, Held remained on probation for several of his criminal convictions, which was scheduled to end in

2

November 2017. (After the hearing, Held successfully completed probation and was discharged from supervision.)

The AHC issued its decision granting Held a probated license on December 1, 2017. With respect to Held's character, the AHC found:

> We believe Held's criminal past does indicate a disrespect for the law and the rights of others, tending to show a lack of good moral character. However, there is no evidence that he has failed to comply with the terms of his supervised probation, and we must take into account that over three years have passed since his most recent conviction. Held not only participated in mandatory restorative justice and addiction treatment during his incarceration, but also sought out an immersive yearlong voluntary program to address substance abuse and modify the behaviors he acknowledged to be a problem. Upon completion, his success allowed him the opportunity to become a facilitator in the program in order to pass on what he had learned. After his release, Held participated in a three-month intensive after-care program that included regular drug testing. He continues to attend Alcoholics Anonymous meetings weekly. Held does not consider himself to be "cured" of his substance abuse: "I know that's a process that I do daily. It will be the process that I have to do the rest of my life. I take pride in that." We believe Held has accepted responsibility for his past, and taken affirmative steps to improve his life despite significant adversity. In sum, he has shown that he is presently a person of good moral character.

(Record citations omitted.) The AHC also found that Held has a good reputation for honesty, integrity, and fair dealing, based on the testimony of Held's sponsoring broker, as well as Held's own testimony. Finally, because Held had passed the necessary examinations and completed the coursework required for licensure, the AHC found that he was competent to transact the business of a real estate salesperson in a manner which safeguarded the public interest.

The AHC concluded that Held met the mandatory qualifications for a real estate salesperson's license under § 339.040.[1] It also found, however, that discretionary grounds existed to deny Held a license under §§ 339.080.1 and

---

[1] Statutory citations refer to the 2016 edition of the Revised Statutes of Missouri, as updated through the 2018 Cumulative Supplement.

3

339.100.2(18), because (1) his criminal convictions were reasonably related to the functions and duties of a real estate salesperson; (2) his stealing convictions involved dishonesty; and (3) his convictions included offenses involving moral turpitude. Despite the fact that grounds existed to deny Held a license, the AHC concluded that it had discretion under § 324.038 to issue him a probated license. Exercising this statutory discretion, the AHC granted Held's application for licensure as a real estate salesperson subject to three years' probation. The AHC specified that

> [t]he conditions of [Held's] probation should include Held's employer maintaining electronic records of his entering and leaving homes of prospective sellers and making them available for inspection by [the Real Estate Commission] at any time. Held should not be permitted to enter a home unaccompanied when no system is in place to create such an electronic record (as with properties listed with brokers who use a combination lockbox for entry). Held should also be required to report any arrest to [the Real Estate Commission] within 48 hours, and submit to drug screening at the discretion of [the Commission].

The Real Estate Commission appealed the AHC's decision to the circuit court. The circuit court reversed the AHC's decision, finding that the AHC did not have statutory authority to issue Held a probated license, and that the AHC lacked competent and substantial evidence to find that Held possessed the requisite moral character and reputation for honesty, integrity, and fair dealing.

Held appeals.

## Standard of Review

> On an appeal from the trial court's review of an AHC decision, we review the decision of the AHC, not the judgment of the trial court. The AHC's decision will be upheld unless it is not supported by competent and substantial evidence upon the whole record; it is arbitrary, capricious, or unreasonable; it is an abuse of discretion; or it is otherwise unauthorized by law or in violation of constitutional provisions. We review the AHC's conclusions on the interpretation and application of the law, however, *de novo.*

4

*Atwell v. Fitzsimmons*, 452 S.W.3d 670, 675–76 (Mo. App. W.D. 2014) (citations and internal quotation marks omitted).

Because our analysis focuses on the correctness of the AHC's decision, Rule 84.05(e) provides in these circumstances that "[t]he party aggrieved by the agency decision"—here the Real Estate Commission—"shall file the appellant's brief and reply brief." Although we review the decision of the AHC, our mandate "reverses, affirms or otherwise acts upon the judgment of the trial court." *Bird. v. Mo. Bd. of Architects,* 259 S.W.3d 516, 520 n.7 (Mo. banc 2008) (citing Rule 84.14).

## Analysis

## I.

In its first Point on appeal, the Real Estate Commission argues that the AHC does not have the statutory authority to issue an applicant a probated license after the Commission has refused to issue the applicant a license. The Real Estate Commission argues that the AHC only has the authority to issue an applicant a full, non-probated license if the applicant shows entitlement to licensure, but that the AHC lacks the discretion to issue an applicant a probated license. We disagree.

Section 339.040.1 provides that a real estate salesperson license

shall be granted only to persons who present . . . satisfactory proof to the [Real Estate Commission] that they:

> (1)     Are persons of good moral character; and

> (2)     Bear a good reputation for honesty, integrity, and fair dealing; and

> (3)     Are competent to transact the business of a . . . salesperson in such a manner as to safeguard the interest of the public.

*See also Harris v. Hunt*, 122 S.W.3d 683, 688 (Mo. App. E.D. 2003). Applicants must also be over the age of eighteen, have satisfactorily completed the real estate salesperson license examination, and have completed the prescribed educational requirements. §§ 339.040.3, .4, .6.

Even if an applicant satisfies the requirements of § 339.040, § 339.080.1 provides that the Commission "may refuse to . . . issue a license to any person known by it to be guilty of any of the acts or practices specified in subsection 2 of section 339.100." Section 339.100.2 sets forth twenty-six grounds on which the Real Estate Commission may file a disciplinary complaint against an existing licensee with the AHC. One of those grounds, § 339.100.2(18), provides that the Real Estate Commission may file a complaint against a licensee who has

> [b]een finally adjudicated and found guilty, or entered a plea of guilty or nolo contendere, in a criminal prosecution . . . for any offense reasonably related to the qualifications, functions or duties of any profession licensed or regulated under this chapter, for any offense an essential element of which is fraud, dishonesty or an act of violence, or for any offense involving moral turpitude, whether or not sentence is imposed.

Where the Real Estate Commission has discretionary grounds to deny a license application under §§ 339.080.1 and 339.100.2, the Commission is authorized to instead issue the applicant a probated license. Section 324.038 provides that:

> Whenever a board within or assigned to the division of professional registration,[2] including the division itself when so empowered, may refuse to issue a license for reasons which also serve as a basis for filing a complaint with the [AHC] seeking disciplinary action against a holder of a license, the board, as an alternative to refusing to issue a license, may, at its discretion, issue to an applicant a license subject to probation.

Reading § 339.080.1, § 339.100.2(18), and § 324.038 together, the Real Estate Commission had the discretion to issue Held a probated license in this case, rather than denying him a license outright, after finding that he had the type of criminal convictions described in § 339.100.2(18). Although the Real Estate Commission had the discretionary authority to issue Held a probated license, it contends that the AHC lacks similar authority when it reviews a license denial by the Commission.

---

[2] The Real Estate Commission is an agency within the Division of Professional Registration. 20 C.S.R. 2250-1.010(1).

6

We therefore turn to the scope of the AHC's remedial authority in review proceedings involving professional licensing decisions.

A license applicant may file a complaint with the AHC to review a Commission decision denying the applicant a license. § 339.080.2. The authority of the AHC to review the Real Estate Commission's license-refusal decisions is set forth in § 621.045.1, which provides:

> The administrative hearing commission shall conduct hearings and make findings of fact and conclusions of law in those cases when, under the law, . . . any of the following agencies . . . refuses to permit an applicant to be examined upon his or her qualifications or refuses to issue or renew a license of an applicant who has passed an examination for licensure or who possesses the qualifications for licensure without examination:
>
> . . . .
>
> Missouri Real Estate Commission.

"If at the hearing the applicant shall show that under the law he is entitled to examination for licensure or licensure or renewal, the administrative hearing commission shall issue an appropriate order to accomplish such examination or licensure or renewal, as the case may be." § 621.120.

In a number of cases, this Court has held that, in its review of professional licensing decisions, the AHC acts in lieu of the licensing agency, and exercises the statutory authority otherwise vested in the licensing agency. Like this case, *State Board of Registration for the Healing Arts v. Trueblood*, 368 S.W.3d 259 (Mo. App. W.D. 2012), involved a licensing agency's challenge to a decision of the AHC which granted a probated license to an applicant with a significant history of substance abuse-related criminal offenses. As in this case, the AHC in *Trueblood* conducted its review pursuant to § 621.045. The AHC also chose to issue a probated license, and impose particular conditions of probation, based (in part) on the same statute at issue here: § 324.038. The licensing agency argued that the AHC erroneously

7

considered whether to grant the applicant a probated license *de novo*, when it should instead have deferred to the decision of the licensing agency. We disagreed.

> [T]he General Assembly mandated that the commission [(referring to the AHC)] have the power to review the department's decision. In fulfilling this role, the commission's decision becomes the decision of the department. The commission's function is to render the administrative decision of the agency. ***The commission actually steps into the department's shoes and becomes the department in remaking the department's decision. This includes the exercise of any discretion that the department would exercise.***
>
> . . . .
>
> [T]he function of the AHC in administrative review proceedings is to render the agency's final decision, exercising the same authority as the underlying agency.
>
> While §§ 324.038 and 334.100 may have given the Board the *original* discretion to decide whether to impose probation on [the applicant]'s license, and to establish the terms of that probation, ***once an application for review was filed, the decision became one for the AHC. In making its decision, the AHC properly exercised the full measure of discretion initially vested in the Board***, without deference to the Board's decision.

*Id.* at 265–67 (citations, brackets, and footnote omitted; emphasis altered); *see also*, *e.g.*, *Dep't of Social Servs. v. Mellas*, 220 S.W.3d 778, 782–83 (Mo. App. W.D. 2007); *State Bd. of Registration for Healing Arts v. De Vore*, 517 S.W.2d 480, 485 (Mo. App. 1974); *State Bd. of Registration for Healing Arts v. Finch*, 514 S.W.2d 608, 615 (Mo. App. 1974); and additional cases cited in *Trueblood*, 368 S.W.3d at 266–67 & n.4.

Under *Trueblood* and the substantial body of caselaw on which it relied, once Held filed a complaint seeking review of the Real Estate Commission's licensing decision, the AHC "step[ped] into the [Commission's] shoes," and was entitled to "exercise[ ] the full measure of discretion initially vested in the [Commission]." This included the discretionary authority to issue Held a probated license, on conditions the AHC determined to be appropriate to protect the public's interests. The AHC was not required to exercise the discretionary authority given by § 324.038 in the

8

same manner as the Real Estate Commission, nor was it required to defer to the Commission's exercise of *its* discretion.

The Real Estate Commission conceded at oral argument that the AHC could exercise the discretion afforded by § 339.080.1—namely, to decide whether or not to issue an applicant a license where a basis for discipline existed under § 339.100.2. While the Commission concedes that the AHC had the discretion to make an "up or down" licensing decision under § 339.080.1, it argues that the AHC had no authority to adopt the middle course permitted by § 324.038: to issue a license, but impose conditions of probation on the licensee. We fail to see any basis for the distinction the Commission seeks to draw. Having found that "under the law [Held] is entitled to . . . licensure," the AHC "issue[d] an appropriate order to accomplish such . . . licensure," as § 621.120 specifically authorizes.

The Commission argues that the AHC lacks the subject-matter expertise to decide whether probation is appropriate, or to decide on probation conditions. In making this argument, the Commission essentially seeks to apply to licensing decisions the bifurcated approach which the legislature has applied to the discipline of existing licenses (where the AHC determines only whether grounds for discipline exist, but the licensing agency determines what discipline to impose). *See* § 621.110. As we explained in *Trueblood*,

> [s]ection[ ] 324.038 . . . contain[s] no similar bifurcated procedure with respect to new or renewal licenses, however, even though the decision to probate a new license is based upon the same grounds . . . which can justify disciplining an existing license. The fact that the legislature explicitly preserved the [licensing agency]'s ultimate discretionary authority with respect to the discipline of existing licenses, but failed to include similar provisions in connection with the imposition of probation on new licenses, confirms that the [licensing agency]'s discretionary authority was not similarly retained in this context.

368 S.W.3d at 268 (citing *Finch*, 514 S.W.2d at 615).

9

The Real Estate Commission also argues that § 324.038.2 expressly provides for review by the AHC when a licensing agency issues an applicant a probated license. Under § 324.038.2, the applicant may file a complaint alleging "that the applicant . . . is qualified for nonprobated licensure pursuant to the laws and administrative regulations relating to his or her profession"; upon the filing of such a complaint "[t]he burden shall be on the [licensing agency] to demonstrate the existence of the basis for imposing probation on the licensee." Section 324.038.2 is irrelevant here, however, since it provides for AHC review only where a licensing agency exercises its discretion and issues the applicant a probated license. That is not what occurred in this case. Here, the Real Estate Commission denied Held <u>any</u> license, probated or otherwise. AHC review of such license denials is provided by §§ 339.080.2 and 621.045. The caselaw interpreting those provisions holds that the AHC steps into the shoes of the licensing agency, and conducts a fresh inquiry into the license application, exercising the same authority as the licensing agency itself.

The AHC exercised the statutory authority granted to it when it issued Held a probated license. Point I is denied.

## II.

In its second Point the Real Estate Commission argues that the AHC's finding that Held has the requisite moral character and reputation for honesty, integrity, and fair dealing was arbitrary, capricious, or unreasonable.

"An administrative agency acts unreasonably and arbitrarily if its decision is not based on substantial evidence." *Jefferson City Apothecary, LLC v. Mo. Bd. of Pharmacy*, 499 S.W.3d 321, 330 (Mo. App. W.D. 2016) (citation and internal quotation marks omitted). "Substantial evidence is competent evidence that, if believed, has probative force upon the issues." *Id.* (citation and internal quotation marks omitted). "Likewise, the agency's failure to consider important aspects or factors of the issue can support a finding that the decision was arbitrary and

10

capricious." *Hundley v. Wenzel*, 59 S.W.3d 1, 8 (Mo. App. W.D. 2001) (citation omitted).

First, the Real Estate Commission argues that the AHC acted arbitrarily and capriciously in finding that Held is a person of good moral character. "Good moral character is generally defined as honesty, fairness, and respect for the rights of others and for the laws of the state and nation." *Hernandez v. State Bd. of Registration for Healing Arts*, 936 S.W.2d 894, 899 n.1 (Mo. App. W.D. 1997) (citations omitted). We conclude that competent evidence supports the AHC's decision that Held is a person of good moral character. As discussed above, Held accepted responsibility for his past criminal conduct, and has taken numerous, sustained, affirmative steps to prevent the recurrence of similar behavior in the future. He has done this by participating and being a facilitator in a series of different substance abuse treatment programs, by participating in intensive after-care programs, and by attending weekly Alcoholics Anonymous meetings. The AHC also found Held to be credible when he testified that he viewed his recovery from substance abuse as an ongoing process requiring ongoing participation in substance abuse prevention programs. *See Trueblood*, 368 S.W.3d at 268–69 (finding that sufficient competent evidence supported AHC's decision to issue applicant a probated license despite applicant's significant history of substance abuse-related crimes, where evidence indicated that the applicant had experienced an extended period of sobriety, exhibited an awareness of her need for ongoing treatment, and applicant was participating in ongoing programs designed to minimize risk of relapse). We also note that, by statute, the AHC could not find Held to be lacking good moral character based solely on his extensive history of felony criminal convictions.[3] Rather, those statutes required the AHC to consider the nature of

---

[3]  Section 314.200 provides:

11

Held's criminal convictions, and his conduct thereafter, as well as other evidence of his character—precisely the inquiry the AHC conducted.

The Real Estate Commission argues that the AHC's finding that Held is a person of good moral character conflicts with the AHC's decision to issue Held a probated license "for the protection of the public." According to the Commission, the AHC effectively found that Held "remained a danger to the public," which is inconsistent with a finding that he possessed a good moral character. The Commission's argument proves too much: under that argument, no applicant issued a probated license could ever be considered to have a good moral character, for the simple reason that the license-issuing agency concluded that probation was warranted. The AHC did not impose conditions of probation on Held because it believe he constituted a present danger to the community. Instead, it imposed those conditions merely to verify, on an ongoing basis, that Held did _not_ present a danger to the public.

The Real Estate Commission also argues that the AHC's finding that Held bears a good reputation for honesty, integrity, and fair dealing was arbitrary and capricious, because it relied upon the testimony of Held's sponsoring broker, who

---

> No board or other agency created pursuant to laws of the state of Missouri . . . for the purpose of licensing applicants for occupations and professions may deny a license to an applicant primarily upon the basis that a felony or misdemeanor conviction of the applicant precludes the applicant from demonstrating good moral character, where the conviction resulted in the applicant's incarceration and the applicant has been released by pardon, parole or otherwise from such incarceration, or resulted in the applicant being placed on probation and there is no evidence the applicant has violated the conditions of his probation. The board or other agency may consider the conviction as some evidence of an absence of good moral character, but shall also consider the nature of the crime committed in relation to the license which the applicant seeks, the date of the conviction, the conduct of the applicant since the date of the conviction and other evidence as to the applicant's character.

*See also* § 324.029 ("Except as otherwise specifically provided by law, no license for any occupation or profession shall be denied solely on the grounds that an applicant has been previously convicted of a felony.").

only testified regarding his personal experience with Held's work ethic and conduct in the office. "Reputation is based on the opinion of the community as a whole, rather than the personal estimate of an individual." *Jenkins v. Revolution Helicopter Corp.*, 925 S.W.2d 939, 944 (Mo. App. W.D. 1996) (citations omitted). Held's sponsoring broker did not testify only to his positive personal experience with Held, but also testified that no one in the office had told him anything that would cause him to question Held's honesty or integrity. In addition, Held's own testimony was relevant to his reputation. *Id.* at 944 ("Just as an individual may know the reputation of another, so may one know one's own reputation." (citation omitted)). At the hearing, Held testified that he believes he has a reputation "in the community of being an honest person." The AHC could rely on this testimony from Held and his sponsoring broker to support its finding regarding Held's reputation for honesty, integrity, and fair dealing—particularly when the Real Estate Commission made no objection to any of that testimony when it was offered.

## Conclusion

We reverse the circuit court's judgment, and reinstate the AHC's decision granting Held a license subject to three years' probation.

 

 

 

_____
Alok Ahuja, Judge

All concur.

13